IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 0 8 2010

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

THE FLAG COMPANY, INC. a
Georgia Corporation,
   Plaintiff,
  v.
STEVEN A CHAN, LLC (d/b/a FIVE
STAR FLAGS and/or VIA5), a
California Limited Liability Company,
and STEVEN A. CHAN, a California
resident,
   Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO:
1:09-CV-1880

Defendants Opposition to Motion for
Summary Judgment

## I. Introduction

Plaintiff's Motion for Summary Judgment is long on insults, but short on truth. Plaintiff Flag Company claims proprietary rights to "farm flag" and "farming flags" because it trademark registered the term "farm flag."

Plaintiff's trademark registration is not disputed. But, there is more to the story.

Trademark registration does not prove one's proprietary rights in a mark. It only gives rise to a presumption. You will defeat the presumption if you establish that the [incontestable] term at issue is generic. You will also defeat the presumption if you establish acquiescence, laches, unclean hands, or estoppel.

There is an old story about a man who lost his glasses one night in the dark street in front of his house. When his wife came home, she found him in the backyard under the porch light looking for his lost spectacles. When asked why is he looking for his glasses in the back when he lost them in the front, the man answered by observing that the light was better in the back.

Plaintiff's factual narrative is to show the court the backyard. It has misled the court by shinning light on just part of the story. The truth is in the front yard.

Although it is undisputed that it registered a trademark for farm flags, the court must deny Flag Company's Motion for Summary Judgment because the presumption associated with that registration will be defeated when the court looks in the front yard. The court must deny Flag Company's Motion because the term or phrase is generic, and therefore cannot be trademarked. Even if we assume for the sake of argument that this term or phrase could be trademarked, Plaintiff's Motion should be denied on the grounds of laches, acquiescence, unclean hands, and estoppel.

Plaintiff wrote its Motion with a poison pen. It was full of disparaging things to say about Mr. Chan. Not only is the venomous prose unseemly and unprofessional, it is also not true.

Flag Company did not "coin" or invent "flag farm.". This term or phrase was already in broad use by 1989, when it claimed to have created the term. Just as it did not invent it, this term or phrase does not refer or identify its particular product. It describes a class of products, no mater where it came from.

A even more egregious example of dissembling is found in Flag Company's description of its relationship with Five Star Flags and Mr. Chan. Mr. Chan was never Flag Company's client or customer. The relationship is just the opposite. From 2002 – 2007, Plaintiff worked for Five Star Flags. In other words, Plaintiff was an active participant in the very conduct of which it now complains.

Flag Company complains to the court it is Mr. Chan's victim. The Flag Company has its gall. Flag Company is not Mr. Chan's victim. Mr. Chan is the victim. Flag Company is the wrongdoer.

Flag Company is a large and wealthy concern. Five Star Flags is small, poor, and vulnerable. Plaintiff did not bring this action to vindicate a property rights, but to use the processes of the legal system to crush a competitor.

The legal system is not a level playing field. It is a venue for the well-healed. It is the preserve for those that can afford an attorney. Justice is out of reach for those who are to poor to hire an attorney. If they are dragged into court, they have every disadvantage because they are navigating the complexities of the legal in pro per – unschooled in law and inexperienced in the court. Defendant Steve Chan is not only in pro per, but he was forced to close down his corporation in order to defend his legal rights. If that is not enough, he has been dragged into this matter from California into a court in Georgia.

Without the benefit of counsel, Mr. Chan has blundered. One of his mistakes was a procedural error in responding to discovery. Flag Company is exploiting that procedural error and urges the court to determine the facts on the basis of this mistake, and not on the merits. Unless justice is a function of class and economics, then the court must allow Mr. Chan to withdraw the deemed admitted requests for admissions.

It is of course true that Plaintiff served Mr. Chan a set of requests for admission on March on March 23, 2010, but this is just half of the story. On this same day, it also served an inspection demand and a set of interrogatories.

Taken altogether, the discovery set on that single day was enormous in scope and burdensome in preparing a response. Mr. Chan tried to set logistics for response and delivery, even trying to ask for an extension to respond, and modify some of the more ridiculous requests, but Plaintiff's counsel suddenly made himself unavailable.

Mr. Chan is unschooled in law. He is unfamiliar with the complexities for the procedural rules of this court. As a result, he sometimes makes mistakes. One of his mistakes was to miscalculated the response date for the discovery. To preserve his rights, he served answers with objections only. However, because of

3

his mistake, they were 1-day late. By operation of law, the requests are deemed admitted.

However, plaintiff has not suffered any prejudice do to this mistake. Within a week, Mr. Chan served supplement responses to each set of discovery, including the requests for admission. The documentation accompanying those supplemental responses included 3000 pdf pages of documents, and access to 7 million more documents.

FRCP 36 allows the court to extend the response time for a request for admission and/or withdrawal or amendment to promote litigation on the merits. FRCP 36 (a)(3) and 36(b). In order to allow this matter to be heard of he merits instead of deemed admissions that came about because Mr. Chan cannot afford counsel and must defend himself in pro per, Mr. Chan asks the court to allow him to withdraw his deemed admissions and replace them with the supplement response that he served within a week of the initial response date.

Plaintiff claims that it coined the phrase "farm flag." It claims proprietary rights to the phrase because it registered it as a trademark.

Plaintiff's registration merely is prima facie evidence of an exclusive proprietary right to the phrase or phrases at issue. It merely is a presumption that will be defeated upon legal and equitable defenses, including that the term or phrase at issue is generic and or that Plaintiff is barred by reason of statute of limitations, unclean hands, or estoppel.

Plaintiff's factual narrative is repugnant because of it is rife with gratuitous disparagement. It is disingenuous, mostly because it is showing the court only the backyard. To find the truth, the court must look out front.

## II.    The Front Yard

"Farm" and "farming" are terms with specialized meaning to realtors. Realtors are schooled in these terms. A "farm" is a Realtor's market. It describes

4

the community that he or she services. It is a geographic description of the community or neighborhood in which he or she sells homes. "Farming" is to market yourself in your "farm." A selection of trade-focused 'how-to' articles published over the relevant timeframes, that attest to these meaning is included in the request for judicial notice. [*see Request for Judicial Notice Series 3000 Series Exhibits*]

"Farm" and "farming" are also dictionary terms in trade-specific dictionaries published 10 years prior to Flag Company's registration of the mark at issue. These dictionary definitions are included in a request for judicial notice. [*see Request for Judicial Notice Series 6000 Series Exhibits*]

Realtors often use giveaways to market themselves. Some might use kitchen mitts with their name plastered on it. Others use notepads and pens. Some use refrigerator magnets. One very common and famous Realtor giveaway is a small American flag. Particularly common around the 4th of July, Realtors walk their "farms" and plant little American flags in the front yards of people's homes. Among Realtors, a "farming" giveaway is described as a "farming" this or that – a farming kitchen mitt, a farming notepad, or a postcard; all of these are 'farming tools'. The published articles that illustrate the pervasive industry concept of farming with giveaways, even pumpkins, relevant to time periods before and after Plaintiff's registration rights are included. [*see Request for Judicial Notice Series 3000 Series Exhibits*][1]

Realtors have used the terms "farm" and "farming" since at least the late 1960's. They have described their marketing giveaways as "farming" this or that also since then. There is nothing unique, creative, or in any way a special contribution denoted by pairing the word farm or farming to flag. It was a phrase known among Realtors long before Plaintiff claims to have "coined" it in 1989. It

---

[1] See also the "Pumpkin Man", Exhibit Q to the Chan declaration.

is an example of obviousness; when said, or heard, or read. It being said is implicit knowledge being explicit.

It is the same as the phrase 'legal pad'; it is, that when stated, or heard, or read, any lawyer or judge 'just knows' what it is.

*Members of the same speech community possess shared implicit knowledge of a speakers intended language function. It is easily explained as 'politely sharing the same experiences' while 'communicating using ordinary speech rules'.*

If we concede the Plaintiff coined the term, it is still to no effect. It is like the Al Gore-internet invention claim. All one needs to do is scratch the surface to see farming with flags is documented since the late 1970's. It was newsworthy and noteworthy then as now. 30 years of documentation exist that reflect this. Realtors have been coining that term the entire period.[2]

Mr. Harold Thompson is a Realtor in Birmingham, Alabama. He has been in the residential real estate brokerage business since 1972. He claims he 'personally planted' "farming flags" beginning in 1986; this sparked a personal tradition resulting in the planting of over 70,000 flags in Birmingham neighborhoods since then. He also is known as the 'Flag Man' (and the Pumpkin Man). He knows the term as generic before 1989. [*see Declaration of Harold Thompson 3, 13, 14, Exhibit Q to Chan Declaration* ].

Mr. Shiraz Ali Perra is a Realtor in Tucson, Arizona. He has been in the residential real estate brokerage business since 1979. That year, in response to the US embassy hostage crisis in Tehran, he claims to have distributed 'farming flags'. His office manager issued a press release resulting in publication on the record. He also directly participated in Coldwell Banker's US flag distribution program, long after his colleagues stopped. In fact, he was interviewed by Tuscon newspapers

---

[2] Mr. Chan has never met a realtor that could not coin that term.

and television stations as a result. He knew the phrase as generic in 1979, or 1990. [*see Declaration of Shiraz Ali Perra, Exhibit M to Chan Declaration par. 3, 7,8,9, also Request for Judicial Notice Exhibit 1032* ].

Mr. Harold Crye, co-founder of Crye-Lieke, fielded a quickly growing army of Realtors to spread US flags in the Memphis, Tennessee area. In 2004, the 26-consecutive year tradition had grown to cover the Mid-South to the tune of 50,000 flags a year. [*See Exhibit 1003 to the Request for Judicial Notice, see also Declaration of Harold Crye*]. He, and his army of Realtors, knew farming flags to be generic from 1978 to 1989, indeed, from 1978 to 1994.

Undoubtedly, if Realtors were using 'farming flags' since the late 1970's, then Plaintiff's claim that it "coined it" ten-years later is specious.

Farming flags is understood by Realtors to mean all little American flags[3] that can be used for farming or marketing. It is a generic term predating Flag Company's 1994 appropriation. It does not designate a specific manufacturer.

There are several businesses that sell farming flags, not just the Flag Company or Five Star Flags ("Five Star" or "Mr. Chan"). For example, real-estate-marketing-ideas.com [*see Exhibits H, I, J, and K to Chan dec*] and lasolashomes.com [*see Exhibit T to Chan dec*] both sold farming flags. When a realtor asks for a farm or farming flags, he or she is asking for a farm or farming flag from any one of these or other sources, not a flag manufactured by the Flag Company.

Based in Southern California, Five Star makes and sells little Americans flags – Realtor giveaway marketing flags. Advertising over the internet, it sells plastic and fabric flags.[4]

---

[3] Standard sizes of flags exist in commercial production: 4x6, 5x8,6x10.8x12,10x15, 12x18 etc.
[4] Mr. Chan manufactured fabric US flags until 2007, after which both plastic and fabric are made.

7

Five Star sells nationally from its website. From 2002 – 2007, it filled orders from customers for plastic US flag orders through blind drops made by The Flag Company. Five Star issued purchased orders (a "PO"), with the name and address of the client and the amount of flags to ship. Five Star's purchase order instructed Flag Company to ship the order to the designated customer in packaging that identified the flags as a Five Star product, and Five Star as the shipper. Five Star paid The Flag Company for the service. Flag Company filled each and every order, shipping product under Five Star's label, with little plastic American flags. It identified each one in every purchase order confirming invoice issued by it from 2004 through 2007 as a 'farm' flag. Plaintiff actively 'stripped' the 'farming flags' mark from each and every blind drop shipment, with each Plaintiff confirmation invoice noting shipping in 'plain boxes'.

Notably, in the July 28, 2005, written communication to the Patent and Trademark Office 'Post Registration Office Action', [5]Plaintiff asserted the mark is 'affixed to all boxes, which are also printed.' *(The mark is NOT placed on the product, but **printed** only on the boxes.)* As shown by this communication, Plaintiff was plainly aware she complied with Five Star's plain-English blind-drop purchase order order terms from 2002 until 2007. Each of the issued purchase orders stated terms included 'No MFG docs' in writing. Each of Plaintiff's matching invoices confirmed she had "stripped the mark" from the shipments. [6] Plaintiff cannot claim Mr. Chan purchased *any product* "branded under Plaintiff's federally-registered trademark". [see Plaintiff's Motion for Summary Judgment par 2.]

Additionally, beginning in 2003, Five Star itself adopted the Flag Company's descriptive nomenclature she used on confirming statements.

---

[5] Please see included CD. Mr. Chan requests Judicial Notice of the entire US PTO file on this market.
[6] Mr. Chan has supplied several hundred purchase orders and matching Plaintiff's invoice to Plaintiff's counsel and the record. Please see Opposition to Motion to Compel CD, Docket #50. These are contained in the files beginning with prefix flagco********. Each invoice Mr. Chan received in response to an issued purchase order is a confirming invoice noting the 'plain box' was used.

*<Farmflags.com>*[7] was registered in the winter of 2003, and starting in 2004, Five Star described its realtor-focused US flag products in its website, advertisements, and purchase orders just as farm flags.

Five Star was not Flag Company's customer. The relationship was just the opposite. Flag Company was Five Star's vendor. From 2002 through 2007, she happily took Five Star's money to ship flags that it called farm flags under Five Star's label. From 2003 through 2007, it shipped product off its shipping dock, that it described in its invoices and receipts as farm flags, that Five Star sold as farm flags.

Not once did Flag Company protest, complained, or make a cease and desist demand to Five Star Flags during that 2002 through 2007 period when it was cashing checks for delivering product under Five Star's name that it describes in its own invoices as farm flags. In fact, Flag Company waited two years from the last Five Star issued purchase order to assert what it now claims as the proprietary rights under its mark. The first time that Flag Company complained to Five Star Flags was in 2009, when through counsel it sent a cease and desist letter.

A registered trademark bestows a presumption of legitimacy. Facts that substantiate equitable and/or legal defenses will defeat that presumption. 15 USC 1115(a). Among the equitable defenses that will defeat the presumption conferred by registration are: acquiescence, laches, estoppel, and unclean hands. All of these defenses apply. This court should deny Plaintiff's Motion for Summary Judgment based on each and every one of these defenses. Also among the legal defenses that will defeat the registration presumption is that the mark is generic. The court should deny Plaintiff's motion on these grounds too.

## III.   Registration Only Confers A Presumption

---

[7] Farmflags.com and farmflag.com resolve to a single server issuing a single set of data. Farmflags.com refers to both.

Registration of a mark is only prima facie evidence that you have an exclusive right to it. One can defeat the presumption by proving a legal or equitable defense or a defect. As stated in pertinent part in the Lanham Act:

"… a mark registered on the principal register … shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration …. , *but shall not preclude an opposing party from proving any legal or equitable defense or defect, including those set forth in subsection (b)… which might have been asserted if such mark had not been registered.*" 15 USC 1115(a), emphasis added.

Plaintiff's mark is 'incontestable,' and subsection (b) (9) states

That equitable principles, including laches, estoppel, and

aquiescence, are applicable. 15 USC 1115(b))(9)

These equitable defenses will defeat the presumption, if proven. They are: 1) Acquiescence, Coach House Restaurant v. Coach and Six Restaurants 934 F2d. 1551, 1558 (11th Cir., 1991); 2) Laches, Kason Industries v. Component Hardware Group, 120 F.3d 1199, 1203 (11th Cir., 1997); 3) Unclean hands, Precision Instrument Mfg. v. Automotive Maintenance Machinery Co, 324 US 806, 814 (1945), and; 4) Estoppel, Tefel v. Reno 180 F.3d 1286, 1302 (11th Cir. 1999).

Among the legal defenses that will defeat the presumption conferred by registration is proof that the mark is either generic or descriptive. Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 937 ["This presumption may, of course, be overcome by proof of descriptiveness, of proof of genericness."]

## IV. **The Motion For Summary Judgment Must Be Denied On The Basis of the Equitable Defenses, Each Of Which Applies**

A.    *Laches*             Looking to the statute of limitations on a comparable state law action, laches under a Lanham Act action requires that you

show the following: 1) A delay in asserting a right or claim; 2) The delay was not excusable, and; 3) By delaying in asserting your right or claim, you have caused the other party undue prejudice. Additionally, the court "must consider the public's interest in the trademark as a definite designation of a single source of goods." Board of Regents v. Buzzas Baseball 176 F.Supp.2d 133, 1348 (N.D. Geogia, 2001).

The comparable Georgia state law is OCGA Section 10-1-390 et seq. This statute provides for a 2 year statue of limitations. See Section 10-1-401.

Five Star Flags began selling realtors little American flags in 2002. Plaintiff, who worked for it, delivered many of these flags in packages that identified them as Five Star Flags' product. Yet it described these flags in its documentation as farm flags. Plaintiff identified them in confirming memos as farm flags. Plaintiff was delivering these farm flags under Five Star's name from 2002 through 2007. Moreover, in 2003, Five Star adopted Flag Company's nomenclature and began calling the product that Flag Company delivered in Five Star packages farm flags. In its literature, and on its website *farmflags.com*, Five Star Flags has identified the product that the Flag Company delivered for it as farm flags.

Whether you start the clock running at 2002 when Flag Company began delivering product that it identified as farm flags in Five Star Flags' packaging, or in 2003 when Five Star adopted Flag Company's nomenclature and started calling the product generically as farm flags, Flag Company has sat on its hands. Just by reason of the comparable 2-year statue of limitations, Flag Company's delay is inexcusable. If Flag Company was so concerned about protecting its proprietary rights, why would it wait 7 long years before issuing any protest, or wait 8 years before filing this lawsuit. Instead, from 2002 through 2007, the Flag Company shipped product it called farm flags under Five Star' packaging and cashed each of his checks.

11

Plaintiff has yet to offer an explanation why it sat on its hands for so many years before doing anything. Considering that it was profiting from the enterprise about which it complains, there is no explanation.

Steve Chan is prejudiced by Flag Company's unreasonable 8-year delay. Considering the 2-year comparable state law statue of limitations, prejudice should be assumed as a matter of law. But there is more to this than just assumed prejudice. From 2002 to 2007, Flag Company knowingly shipped product it called farm flags under Five Star Flags' label. It did this in full knowledge of *farmflags.com*. Instead of saying something about it immediately, it delivered more and more Five Star-labeled farm flags and cashed more and more of Mr. Chan's remittances. Now, after all this time, it points to this very conduct in which it was a participant and seeks damages based on it.

Mr. Chan has built a business during the 8 years at issue. It sells farm flags. And, for 8 years it has been selling these flags. In fact, since Flag Company was profiting off of it too and participating in the enterprise, it too was engaged in this allegedly wrongful act. Mr. Chan and Five Star cannot undo what it has done during the past 8 years. It cannot unravel its business. It paid Flag Company for its services in full. Steve Chan has been prejudiced by Flag Company's 8-year delay.

Lastly, the public interest in this alleged mark *cannot be overstated*. The opposite of the coattail-riding infringer is the monopoly single source generic mark holder. This mark is not of interest to the public as a whole, just the Realtor public. Among Realtors, 'farming flag' is a generic term at this time, and it always has been, generic. It describes all Realtor giveaway little American flags, and not a particular brand or manufacturer. The Realtors' public interest is that 'farming flags' is intellectual property that belongs to the domain of Realtors. It is not a phrase that belongs to their vendor community. It is a generic phrase that assures Realtors choice, economy of search costs, and competition for their dollars.

Flag Company acknowledged this when delivering its product as a 'farm flag', under Five Star Flags' label.

B.   _Acquiescence_                "Acquiescence is an equitable defense that denotes active consent by a senior user to another's use of is mark." Coach House Restaurant 934 F.2d at 1558. The elements to it are here: "(1) the senior user actively represents that it would not assert a right or claim; (2) the delay between active representation and assertion of he right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. Board of Regents 176 F.Supp.2d at 1347.

Mr. Chan has already demonstrated elements 2 and 3, delay is not excusable and undue prejudice, respectively. He refers the court to the section above in the laches analysis.

Flag Company delivered farm flags under Five Star Flag's label for five long years. Its purchase order confirmations always described the product that it was delivering as Five Star's goods, and as farm flags. For five long years, it cashed Mr. Chan's remittances.

Flag Company's purchase order confirming invoice serves as an acceptance. It created a contract, a legally binding agreement by Flag Company to delivery under Five Star Flags' packaging, farm flags. By dint of the time frame – five long years – the exchange of money, and the contract binding her company, it should be assumed as a matter of law that a senior user actively represented that it would not assert a right or claim.

But, there is more than a mere assumption. There were active representations. Mr. Chan had many conversations about the product with Vicki Lawrence. In 2004, they knew that their company was delivering "farm flags" packaged as Mr. Chan's product. In 2004, they knew that Five Star Flags was manufacturing it's own US flags from polycotton blends, and marketing its little

American flags as farm flags, at *farmflags.com*. It knew that it was filing orders for plastic US flags identified as a farm flag. [*see Chan dec Exhibits C, O, P, and Q*]. Each and every confirmation invoice the Flag Company sent to Mr. Chan asserted the shipment was made in a 'plain box'; the same box Plaintiff in 2005 asserted to the US PTO that the mark was 'printed' on and 'affixed' to. Until receiving its cease and desist letter in 2009, Plaintiff said nothing about enforcing its exclusive rights under the mark. Plaintiff's Motion for Summary Judgment should be denied on the grounds that it acquiesced to Five Star's use of the phrase 'farm flags' for sales of fabric as well as plastic US flags to Realtors.

    *c.*    *Unclean hands*    Unclean hands is a doctrine that requires that "he who comes into equity must come with clean hands. Precision Insrument Mfg. Co. v. Automobile Maintenance Machinery Co. 324 US 806, 814 (1945). It "requires that the party seeking equity shall have acted fairly and without fraud or deceit as to the controversy in issue." Board of Regents 176 F.Supp.2d at 1348.

    Plaintiff has not acted fairly and without fraud or deceit regarding the controversy at issue. Its hands are not clean.

    Plaintiff faults Mr. Chan as the "red-handed" "infringer" that this court needs to stop. But Plaintiff itself has red infringer fingers. It was a participant in the enterprise that it now faults, and for five long years, it was happy to cash Mr. Chan's remittances, and profit from it.

    For five years, Flag Company shipped farm flags to Mr. Chan's Realtor customers, packaged and delivered by Plaintiff as Five Star's product. From 2004 through 2007, the packages that it delivered were marketed, sold, and delivered as farm flags. If this was a wrongful act, then Plaintiff was one of the wrongful actors. It is three of the five fingers of the infringer's red hand.

    There is an old story about the guy who was convicted of murdering his parents. At sentencing, he asked the court for mercy. After all, he is an orphan.

If there was wrongdoing, Plaintiff was a participant, and happily cashed checks for five years. It profited from it wrongdoing, and now, after eight years, so much time has elapsed and a gravy train of checks has come to an end, it now complains. If there was wrongdoing, which there was not, then Plaintiff is a wrongdoer too. Its hands are unclean.

    *d.*    *Estoppel*    To prevail on estoppel, one must show: "(1) words, acts, or conduct or acquiescence by the plaintiff causing the defendant to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the defendant upon the state of things so indicated." Board of Regents 176 F.Supp.2d at 1347 – 1348.

Steve Chan has already shown acquiescence. He has also shown the second element – willfulness or negligence with respect to the acts, conduct or acquiescence. Flag Company knew that it was shipping farm flags and it was packaging and shipping it for a profit as Mr. Chan's product. It knowingly delivered product that was bought and sold and delivered as farm flags. Five Star Flags' detrimental reliance is manifest.

At first, Mr. Chan did not market or advertise its product as farm flags. A year into the enterprise it adopted Flag Company's nomenclature. It was only in 2003 that Five Star Flags began to market its product as farm flags – the name employed by Flag Company when it confirmed Five Star Flags' purchase orders. Flag Company made no complaint and lodged no protest until two years after receiving the last year-2007 purchase orders, the last ones sent by Mr. Chan's former company prior to the receipt of a Cease and Desist letter.

Mr. Chan has changed his position. He has detrimentally relied on Plaintiff's acquiescence. He identified his fabric US flags as 'farm flags', just like the plastic ones. When Realtors wanted 'tiny' giveaway flags like 4x6 inch flags, or 6x10 inch

ones, he also identified them as 'farm flags' to Realtors. Flag Company is estopped from asserting the claim at issue.

## V.   Plaintiff's Motion For Summary Judgment Must Be Denied Because The Mark Is Generic

A.   A term is generic if it "is commonly used as the name of a kind of goods." Liquid Conrols Corp. v. Liquid Control Group 802 F.2d 934, 936 (7th Cir. 1986). "Unlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is a species." Liquid Controls Corp. 802 F.2d at 936. If a term is generic, it cannot be trademarked. Liquid Controls Corp. 802 F.2d at 936. The presumptions obtained by registration will be defeated upon proof that the term is generic. Liquid Controls Corp. 802 F.2d at 937.

And further, 15 USC 1065 (4) states: "no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered."

The term "farming flag" is generic. Specific to realtors, the phrase "farm flag" or "farming flag" specifies a genus, not a species. Protecting that phrase with a trademark is similar to a mark protecting the phrase "copy machine." The phrase 'farming flag' can not have incontestable status.

Plaintiff's proprietary claim rests on its assertion that it "coined" the term in 1989. According to Plaintiff, he invented the term ... it sprang into being as a result of his industry and creativity. He deserves proprietary rights because he is father of its invention.

But, Plaintiff did not invent the term. Someone else invented it, maybe a Crye-Leike Realtor, or even Mr. Perra [*see above*]. As we can see from Mr. Perra's declaration, he was farming with flags ten years earlier in 1979 [*Perra dec*]. Mr. Perra's declaration, the Pumpkin Man's declaration, Mr. Crye's declaration, plus

16

all the other newspaper articles for which Mr. Chan has requested judicial notice constitute insurmountable proof that Plaintiff did not invent the term. It is not the product of his creativity. If he did not invent it, then it does not apply to Plaintiff's specific product. The phrase existed previous to Plaintiff's product, and even previous to Plaintiff's business formation. It existed well in the public domain of the professional real estate industry, where the tactic of farming with US flags is famous. Just like all the other 'farming tools' pressed into use.

As we know from the declarations from Mr. Perra, as well as the newspaper articles submitted by way of request for judicial notice, the phrases farm flag and farming flag are generic. Mr. Bob Stanley, from Florida farmed with flags in the mid 1980's [*see Declaration of Bob Stanley as Exhibit R to Chan dec*] before Plaintiff sold a single flag. Mr. Richard Fenner of First Team Real Estate in Irvine, California, bought flags, and planted them in the ground in 1986. [*see Declaration of Richard Fenner as Exhibit R to Chan dec.*] So did Sharon Roshek, from Colorado Springs [*see Declaration of Sharon Roshek, attached as Exhibit L to Chan dec*]. Mr. Harold Thompson in Birmingham, Alabama [*see Declaration of Harold Thompson attached as Exhibit Q to Chan dec*], did it, too.

Farming flags describe a genus – small American flags used by realtors as a marketing giveaway. It does not refer to a species – i.e. the small American realtor giveaway flag manufactured by a specific entity. It is not a Xerox copy machine, but simply a copy machine, which cannot be trademarked.

Realtors use the phrase farm flags as a generic term to describe any small realtor marketing giveaway US flag. It was employed in that fashion in this specific industry for 10 years before 1989 when Plaintiff began their business. In 1994, Plaintiff secured a registration, and the phrase 'farming flags' was generic, it still is today. This phrase cannot be trademarked.

17

B. Flag Company argues it has bought legitimate rights in the phrase 'farming flags' by its 20-year promotion [*Lawrence dec at par 12*]. But turning a generic term into a trademark is an 'impossibility' as noted in Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F. 2d 4 - Court of Appeals, 2nd Circuit 1976 at 10, stating "no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name. See, accord, Application of Preformed Line Products Co., 323 F.2d 1007, 51 CCPA 775 (1963);Weiss Noodle Co. v. Golden Cracknel and Specialty Co., 290 F.2d 845, 48 CCPA 1004 (1961); Application of Searle & Co., 360 F.2d 650, 53 CCPA 1192 (1966). We have recently had occasion to apply this doctrine of the impossibility of achieving trademark protection for a generic term, CES Publishing Corp. v. St. Regis Publications, Inc., 531 F.2d 11 (1975). "

C. Plaintiff's use of the phrase has been generic. [*see Chan dec Exhibit D pg 14, "Great American Patriot interview of Plaintiff (2005); and Exhibit T {also as Judicial Notice Request Exhibit JD-7, left column ad under 'Farming Tools'}* ]. Flag Company acquiesced in generic use of the term. This did not just occur with Five Star Flags. In limited discussion during investigation of this suit, Mr. Chan spoke with David Erickson, who marketed farming flags during the period 2003-2009 at his web site real-estate-marketing-ideas.com. [see Chan dec at par ]. Mr. Erickson, who was supplied with plastic flags by Plaintiff, marketed plastic flags to Realtors until he was told to 'stop using [farming flags]' by Plaintiff, contemporaneous with the filing of this suit. [*see Chan dec* ]. Mr. Erickson's web site can be found on the internet archive efforts of archive.org, aka the 'wayback

machine,' where the *now-missing site* can be viewed for versions during different years. [*see Chan dec Exhibits G, H-(2003), I-(2004), J-(2006), K-(2007)*].[8]

A would-be proprietor's use of the words in the mark to refer to the kind of [goods] it and its competitors provide is powerful evidence that the words in the putative mark are being used generically. See Retail Servs. Inc. v. Freebies Publ'g, 364 F.3d 535, 545 (4th Cir.2004); 2 McCarthy, supra, at § 12.13.

## VI.  Plaintiff's Motion For Summary Judgment Must Be Denied Because Realtors will not be Fooled

Plaintiff asserts a likelihood of confusion. The Supreme Court states: "In sum, a plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case, 15 U. S. C. § 1115(b), while the defendant *has no independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith*, § 1115(b)(4)." [see KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 US 111 (2004) at conclusion] *emphasis added.*

Mr. Chan, arguing herein the mark is generic, is NOT using the phrase or it's derivatives as a mark. He contends as an affirmative defense, the term is used 'descriptively, not as a mark, fairly, and in good faith." Mr. Chan has no burden to negate Plaintiff's likelihood of confusion. Nonetheless, he shows the court: Plaintiff acknowledges receipt of phone calls from real estate agents, and concedes

---

[8] See in particular page 2 of Exhibit J. Plaintiff has complained throughout the litigation about the size of the flags Mr. Chan makes in his backyard. These are mostly 12 x 18 inch flags. But Realtors will farm with other size flags depending on cost and their own aesthetics. In Mr. Erickson's former site, in recognition of this, he also marketed other sizes of flags as farming flags; these include 8x12 inch and 12x18 inch fabric flags. Realtors will also farm with flags made from fabric, not just plastic. In recognition of this, Plaintiff also markets 12x18 inch cotton flags to Realtors. (No-fray is a generic term in the flag industry referring to hot-knife cut flags that have been 'finished' at the mill with a plasticizing 'starch'; when cut with the hot-knife, hemming is not required, and the unfinished fabric edges do not fray. Most cemetery stick flags are no fray flags.)

"all asked if [she] was the company in Costa Mesa." [*see Lawrence dec 24-25*]. This is testament to Five Star Flags' clear differentiation in the marketplace. Not only is Mr. Chan's operations clear on the other side of the USA in California, but Five Star's marketing copy clearly state 'we are running production...'. Mr. Chan clearly holds himself out to the marketplace as a manufacturer. [*see Chan dec. Exhibit C and O, left column of copy*]. As in Plaintiff's declaration, customers demand an answer; they want the California company.

Mr. Chan hereby requests judicial notice from this court of the fact the every single state in this union regulates and licenses the 'consuming public' relevant to this matter, namely residential real estate brokerage professionals. As part of the judicial notice, please note each state further requires continuing professional education of licensees. The inference to be drawn from this is that Realtors are smart and savvy, they pay attention to the fine print. They are not easily fooled, especially when it comes to items being purchased to give away.

Plaintiff's portrayal of confusion in the marketplace can just as easily be interpreted to be the exact opposite; Realtors will not be fooled. Even if you are to adopt Plaintiff's argument, another district has succinctly noted:

> " Evidence establishing a likelihood of confusion simply "do[es] not bear upon the question of whether [a] trademark ... [is] generic." Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144-45 (4th Cir.2000)."

## VII: Rule 11 – Set an example for abusing the process

1. Plaintiff's pleadings failed to acknowledge to the Court that the underlying goods to this action is the US national flag, until the filing of the Motion for Summary Judgment [*the instant motion*].

2. In filing this Motion for Summary Judgment, Plaintiff's counsel failed to

execute the minimum level due diligent fact-check that Rule 11 imposes upon officers at this Court [*see Exhibit E, letter from Plaintiff's cou sel date 4-28-2009 page2, 3ʳᵈ paragraph as he names the American flag things like 'advertising flags.'*] and attempts to sweep a 16 year set *of Judicially Noticeable* items under the rug.

3. The course of conduct in prosecuting this case in light of the underlying legal standards as they apply to the causes of action, must call into question the role of the Office of the Court, Plaintiff's counsel, in their Rule 11 obligations.

4. Prior to Plaintiff's claims of rights as of 1989 or 1994, is an easily-found 16-year chronicle of Realtors farming with flags taken from merely a scratch at the surface of the whole 'public record'. The law that is Lanham today says, look at the facts. Plaintiff was provided a 'mountain of facts' and nobody should kid around: AGG, the law firm, absolutely 100% has either WESTLAW, lexis/nexis or both. In spite of this, we are wasting this courts time on the most frivolous, and basic abuse of your Court room.

5. It is implausible not to infer potentially triable facts from that 16 year record.

6. This court should infer an ulterior motive for the proceedings. It is easily inferred from the tone and contents of the pleadings. A continuous misstatement and avoidance of facts driving a concerted effort to 'put a notch', as in a notch in a pistol grip for each successful kill. It is an avoidance of the merits, and a driving focus to push Mr. Chan into a legal noose, so that the merits remain in the unlit front yard. It is an action prosecuted to enforce unenforceable rights, nay, to actually attempt to strengthen an unenforceable right. These are the kinds of abuses Rule 11 exist for.

7. Mr. Chan was indeed fair with the court, these proceedings, and the adversary. Public policy, as interpreted by the Courts of this land, favors settlement even to competing public interests. In this way, the court conserves it's resources.

21

Chan sought settlement, and none was forthcoming. [ *Chan Declaration at 99]*.
Mr. Chan has no counterclaim filing. The state of the case before you in this instant
Motion for Summary Judgment is a Prima Facie Rule 11 case.

8. This lawsuit is not about protecting alleged infringement, but about crushing
a competitor using the judiciary with the purpose of maintaining a monopoly
position. Plaintiff acknowledges she was educated by counsel that she was dilatory
in the enforcement upon a generic mark,  and that the prosecution of this suit is the
cure.


## VIII: Rule 11 – The goods at issue are not allowed

Plaintiff is well aware she rests upon those documents called out in Mr. Chan's
Statement of Material Facts. It is here the story begins. It is plainly seen by
pondering the evidence the goods are not allowed. [please see paragraph 41]


Mr. Chan manufactures American flags and has been prosecuted for this past year
for doing so. A glance at the Exhibits is not fact finding.  A glance at the evidence
reveals the examiner specifically **crossed** the American Flag made out of plastic
bout near 12x18 inches on a 30 inch stick, OFF THE LIST OF GOODS THAT
CAN BE ASSOCIATED WITH THE MARK AT ISSUE.



CONCLUSION

For the foregoing reasons, Defendant requests the Court deny Plaintiff's Motion.
Defendant requests the court inquire of its free will as to the Officer's conduct in
relation to Rule 11, since the abuse is so facile, it is indeed repugnant. I haven't got
a clue as to what to ask you to do, except maybe you ought to take that counselor
out to the woodshed and whip up on him.

He should have counseled his client to take my previous offer. It is in the record. However, he led his client down a bad path.  This should be viewed as unfaithfulness; he is like the black hat search engine guys that everyone hates, that granted there was color to the claim as can be clearly seen by the government chop, but that color is not deep.

Or perhaps, your ilk takes pleasure in the idiocy of making a fine fellow like Mr. Chan stumble about for a year chasing his tail, under the pure and frivolous nature of this proceeding.

I tell everyone it's a sordid tale.

Lucky for me, I stumbled around, put on them glasses I dropped in the dark and could finally see. Please see:

Tamoxifen recognized that its rule shields troubling settlements from the antitrust laws, but concluded that the policy favoring settlement is so strong that it must extend even to "fatally weak" patents, "even though such settlements will inevitably protect patent monopolies that are, perhaps, undeserved." Tamoxifen Citrate, 466 F.3d at 211.

This recent case bounced around the legal blogosphere, it is of note in that there is a parallel here.

Do what the Court Must.

Respectfully Submitted this 8th Day of July, 2010

Steven A Chan

American Flag Manufacturer

Five Star Flags

720 Center St

Costa Mesa, CA 92627

2viavr@gmail.com

949-650-6698

Respectfully Submitted this 8th Day of July, 2010

Steven A Chan

American Flag Manufacturer

Five Star Flags

720 Center St

Costa Mesa, CA 92627

2viavr@gmail.com

949-650-6698

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE FLAG COMPANY, INC. a )
Georgia Corporation, )
)
       Plaintiff, )
)
    v. )
)
STEVEN A CHAN, LLC (d/b/a FIVE )
)
STAR FLAGS and/or VIA5), a )
)
California Limited Liability Company, )
)
and STEVEN A. CHAN, a California )
)
resident, )
)
       Defendant )
)

CIVIL ACTION NO:
1:09-CV-1880

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day manually filed by placing into a package, sent by courier, the foregoing **OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court. The Clerk of Court will use the CM/ECF system to automatically send e-mail notification of such filing to the following attorneys of record:

J. Tucker Barr
Arnold Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363-1031
Tel: (404) 873-8500
Fax: (404) 873-8501
Email: Tucker.barr@agg.com
Further, a copy has been placed in the US Mail, and sent to:

Page **1** of **3**

J. Tucker Barr
Arnold Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363-1031
Tel: (404) 873-8500
Fax: (404) 873-8501
Email: Tucker.barr@agg.com

Dated the 7th of July, 2010

Steven A Chan

American Flag Manufacturer

720 Center Street

Costa Mesa, CA 92627

949-650-6698

2viavr@gmail.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil Local Rule 7.1D, this is to certify that the foregoing Opposition To Plaintiff's Motion For Summary Judgment complies with the font and point selections approved by the Court in Civil Local Rule 5.1C. The foregoing Request was prepared on computer using New Times Roman font (14 point).

Dated the 7th of July, 2010

Steven A Chan

American Flag Manufacturer

720 Center Street

Costa Mesa, CA 92627

949-650-6698

2viavr@gmail.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| THE FLAG COMPANY, INC. a Georgia Corporation, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN A CHAN, LLC (d/b/a FIVE STAR FLAGS and/or VIA5), a California Limited Liability Company, and STEVEN A. CHAN, a California resident, <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NO:
1:09-CV-1880

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day manually filed by placing into a package, sent by courier, the foregoing **OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING DOCUMENTS** with the Clerk of Court. The Clerk of Court will use the CM/ECF system to automatically send e-mail notification of such filing to the following attorneys of record:

J. Tucker Barr
Arnold Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363-1031
Tel: (404) 873-8500
Fax: (404) 873-8501
Email: Tucker.barr@agg.com
Further, a copy has been placed in the US Mail, and sent to:

J. Tucker Barr
Arnold Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363-1031
Tel: (404) 873-8500
Fax: (404) 873-8501
Email: Tucker.barr@agg.com

Dated the 6th of July, 2010

Steven A Chan

American Flag Manufacturer

720 Center Street

Costa Mesa, CA 92627

949-650-6698

2viavr@gmail.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil Local Rule 7.1D, this is to certify that the foregoing Opposition To Plaintiff's Motion For Summary Judgment And Supporting Documents For Summary Judgment complies with the font and point selections approved by the Court in Civil Local Rule 5.1C. The foregoing Request was prepared on computer using New Times Roman font (14 point).

Dated the 6th of July, 2010

Steven A Chan

American Flag Manufacturer

720 Center Street

Costa Mesa, CA 92627

949-650-6698

2viavr@gmail.com