ł

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OCT 1 4 2010

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

THE FLAG COMPANY, INC. a
Georgia Corporation,

    Plaintiff,

v.

STEVEN A CHAN, LLC (d/b/a FIVE

STAR FLAGS and/or VIA5), a

California Limited Liability Company,

and STEVEN A. CHAN, a California

resident,

    Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO:
1:09-CV-1880

Memorandum of Points & Authorities:

Defendant's Opposition to Motion for
Summary Judgment

---

## Defendant's Opposition to Motion for Summary Judgment

I.    Introduction

    Plaintiff's factual narrative is long on gratuitous and unprofessional disparagement, and short on relevant facts. The narrative is insulting and disingenuous.

    Plaintiff Flagco is not the victim. Steve Chan is the victim. Flagco is the victimizer – the wrongdoer. This lawsuit is not about Flagco vindicating its property rights over a phrase that it invented. It did not invent "farming flags" or "farm flag." It has no legitimate property rights to either of the two phrases. This lawsuit is an attempt by the much richer and more powerful Flagco to use the processes of the court to crush its market competitor, the much weaker Steve Chan. Plaintiff, the victimizer, is misusing the legal process.

Mr. Chan was conducting business under the protection of a corporate entity. His relatively small operation was unable to afford counsel. Chan, forced into litigation in a venue on the other side of the country, and forced to discard his corporate entity, appears for himself in pro per. [see Defendant Steve Chan's Statement of Additional Facts in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition Facts") #1]

Plaintiff is afraid of litigating this matter on the merits. Instead, it wishes to exploit a procedural mistake by Mr. Chan in responding one day late to its flood of discovery. Mr. Chan is not a lawyer, and made a mistake, serving a response – objections only – one day late, then supplemented all discovery responses with a huge amount of responsive information.[Opposition Facts #2, #3, #4]

There is a famous story about an old man with poor vision and expensive glasses to correct his poor vision. One evening, as he is walking toward is home, the glasses fall off his nose into the dark and unlit street in front of his house. After waking his wife from a deep and restful slumber, the old man looks around outside for his glasses. But, because his only outside light is in back, he limits his search to there. When his wife asks him why is he searching in back if he lost his glasses in front, he promptly answers: "Because the light is much better in back!"

Plaintiff claims that it coined the phrase "farm flag." It claims proprietary rights to the phrase because it registered it as a trademark. [Opposition Facts #8, #9, #10, #11, #12]

Plaintiff's registration merely is prima facie evidence of an exclusive proprietary right to the phrase or phrases at issue. It merely is a presumption that will be defeated upon legal and equitable defenses, including that the term or phrase at issue is generic, improperly issued, or that Plaintiff is barred by reason of statute of limitations, aquiescence, unclean hands, or estoppel.

Plaintiff's disingenuous factual narrative is repugnant because of it is rife with gratuitous disparagement showing the court only the backyard. To find the truth, the court must look out front.

II.     The Front Yard

"Farm" and "farming" are terms with specialize meaning to Realtors. To a Realtor, these are descriptive terms. A "farm" is a Realtor's market, describing the community that he or she services. "Farming" is to market yourself in your "farm." [Opposition Facts #6]

Realtors often use giveaways to market themselves. One common Realtor giveaway is a small America flag used around the 4th of July, Realtors walk their "farms" and plant little American flags in the yards of people's homes. Among Realtors, a "farming" giveaway is described as a "farming" this or that – a farming kitchen mitt, a farming notepad, or a farming fridge magnet. These all are 'farming tools.' With regard to the little American flag, Realtors know the giveaway a "farming flag." [Opposition Facts # 7]

Realtors have used the terms "farm" and "farming" since at least 1978. They have described their marketing tools as "farming" this or that also since 1978. There is nothing unique, creative, or in any way a special contribution denoted by pairing the word farm or farming to flag. It was common knowledge among Realtors long before Plaintiff claims to have "coined" it in 1989. [Opposition Facts #8]

Carol Rayburn is a California Realtor that has been in the business since the late 1970's. She claims that she used the marketing technique of farming with flags in 1985. Undoubtedly, if she was farming with flags in 1985, then Plaintiff's claim that it invented it in 1989 is dubious. [Opposition Facts #9]

Harold  Crye is a Realtor from Tennessee.  He claims the term farming flags, ie marketing with small American flags, has been in use in his State since 1978 and that he, and his firm, Crye-Leike Realtors, Inc., was farming with flags from 1978 to 2004, in a 2004 newspaper published account, as well as his declaration herein. If Mr. Crye was using farming flags in 1978, then Plaintiff did not "coin" the term in 1989. [Opposition Facts #10]

Harold Thompson is a Realtor known as the 'Flag Man' in the Birmingham, Alabama area.  He claims that farming flag is a term that has been in use since the late 1970s, and that he was using farming flags in 1986. That year he established an annual tradition of farming with flags. If he was using farming flags in 1986, Plaintiff did not coin this term in 1989. [Opposition Facts #11]

Sharon Roshek is Colorado Realtor.  She was using farming flags in 1988 – one year before Plaintiff allegedly coined the term.  Shiraz Ali Peera, an Arizona Realtor, says that he has been using farming flags since 1979.  Richard Fenner, a California Realtor, has been farming with flags since 1986 – three years before Plaintiff claims to have invented it.        [Opposition Facts #12]

Based in Southern California, Chan ("Five Star Flags", "Five Star" or "Chan") makes and sells little Americans flags, for Realtors to give away. Advertising exclusively over the internet, it sells plastic and fabric flags. In 2005, Chan started making 'cotton' stick flags[1] and in 2007, started making plastic ones. [Opposition Facts #14]

The company sells nationally from its websites.  From 2002 – 2007, it filled orders from Realtors for  plastic US flags through blind-drops made by Plaintiff Flagco. Five Star issued purchased orders to Flagco, with  explicit instructions to Flagco to pack and ship the order to the designated customer in packaging that

---

[1] Most fabric stick flags called 'cotton' are really a blend, i.e. a 60/40 polyester/cotton blend is common.

identified the flags as Five Star Flags' product. Five Star paid Flagco for the service of packing, stripping the mark, and shipping each order direct from Plaintiff's Georgia shipping room, under the Five Star Flags' label. Flagco's confirming statements, (bills of sale), confirmed this stripping of marks without complaint on every single purchase order Five Star issued them, from 2002-2007. Their bills of sale did not call the product 'farming flags', but only noted it as 'farm' flag. Additionally, beginning in 2004, Five Star Flags itself adopted Flagco's nomenclature. Starting in 2004, Five Star Flags described its products in its website, and advertisements, just as 'farm' flags. There was never a complaint from Plaintiff about this. [Opposition Facts #15, #17]

Five Star Flags was not Flagco's customer. The relationship was just the opposite. Flagco worked for it. From 2002 through 2007, Plaintiff happily took Five Star Flags' money to pack, strip, and ship flags that it called farm flags under Five Star Flags' label. From 2004 through 2007, it shipped product that it described in its invoices and receipts as farm flags that Five Star Flags marketed, packaged and sold as farm flags. Notably, the packaging was in Plaintiff's 'PLAIN' boxes. [2] [Opposition Facts #16]

Not once did Flagco protest, complained, or make a cease and desist demand; in fact, Flagco waited two years after the last Five Star Flags Purchase Order it received, to assert what it now claims as the proprietary rights under its mark. The first time that Flagco complained to Five Star Flags was in 2009, when through counsel it sent Five Star a cease and desist letter. [Opposition Facts #17]

A registered trademark bestows a presumption of legitimacy. Facts that substantiate equitable and/or legal defenses will defeat that presumption. 15 USC

---

[2] The plastic US flags manufactured by Plaintiff are not imprinted with 'Farming flags', only 'Made in USA'. The USPTO prosecution history clearly shows Plaintiff's representation the mark is PRINTED on all shipping containers.

1115(a). Among the equitable defenses that will defeat the presumption conferred by registration are: acquiescence, laches, estoppel, and unclean hands. All of these defenses apply. This court should deny Plaintiff's Motion for Summary Judgment based on each and every one of these defenses. Among the legal defenses that will defeat the registration presumption is a finding that the mark is generic, or that the mark was improperly issued. The court should deny Plaintiff's motion on these grounds, too.

III.   Plaintiff's Motion Should Be Denied Because It Lacks Admissible Evidence

Plaintiff's Motion for Summary Judgment can be readily resolved on evidentiary grounds. [Opposition Facts #18]. Plaintiff's Motion is predicated on the declaration of Vicki Lawrence. It is even through her application that Plaintiff valiantly tries to lay foundation for the USPTO records on this matter, including the prosecution history, the Certificate of Registration [Declaration of Lawrence, paragraph 8 -"Exhibits B and C and true and accurate copies of the records of the United States Patent Office ..." ]

Vicki Lawrence is not the custodian of records for the USPTO. She cannot lay the foundation for any of the documents that are necessary for Plaintiff to prove that it has the Mark that gives it exclusive rights to the phrase 'farming flags'. These essential documents are hearsay and inadmissible.

Ms. Lawrence's declaration is rife with evidentiary problems that render most of the individual paragraphs in her declaration inadmissible. These problems are described in detailed in Mr. Chan's Evidence Objections.

But, it is not just individual paragraphs in Ms. Lawrence's Declaration that are inadmissible. Her entire declaration is inadmissible.

A declaration is admissible under 28 USV 1746 if it includes an attestation clause in substantial compliance with the forms listed in the statute. If the

declaration is signed within the US, the required form for the attestation clause would state under subsection (c) of the statute, "I declare under penalty of perjury that the foregoing is true and correct."

Ms. Lawrence's declaration contains the required language, and then some. In her attestation clause, she says "I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge and belief." [Lawrence Declaration, page 9.]

Ms. Lawrence's elaboration on the required form on the attestation clause substantially changes it. By adding the 'to the best of my personal knowledge and belief' the attestation clause is no longer a statement under penalty of perjury that the facts in her declaration are true. It is now a wishy-washy statement made to the best of her personal knowledge and belief. At best, her testimony is now made on information and belief, which is not admissible.

Mr. Chan objects to Ms. Lawrence's Decalaration in its entirety and moves to strike all of it, including its exhibits. As set forth in his Evidence Objections, he also moves to strike discrete paragraphs and exhibits in this Declaration. The Court can deny Plaintiff's Motion if it sustains Mr. Chan's objections.

IV.    Registration Only Confers A Presumption

Registration of a mark is only prima facie evidence that you have an exclusive right to it. One can defeat the presumption by proving a legal or equitable defense or a defect. As stated in pertinent part in the Latnham Act: "... a mark registered on the principal register ... shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration .... , but shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had no been registered." 15 USC 1115(a), emphasis added.

Among the equitable defenses that will defeat the presumption, if proven, are: 1) Acquiescence, Coach House Restaurant v. Coach and Six Restaurants 934 F2d. 1551, 1558 (11th Cir.; 1991); 2) Laches, Kason Industries v. Component Hardware Group, 120 F.3d 1199, 1203 (11th Cir., 1997); 3) Unclean hands, Precision Instrument Mfg. v. Automotive Maintenance Machinery Co, 324 US 806, 814 (1945), and; 4) Estoppel, Tefel v. Reno 180 F.3d 1286, 1302 (11th Cir. 1999).

Among the legal defenses that will defeat the presumption conferred by registration is proof that the mark is either generic or descriptive. Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 937 ["This presumption may, of course, be overcome by proof of ...genericness."]

V.    Plaintiff's Motion Must Be Denied On The Basis of The Equitable Defenses, Each Of Which Applies

A.    Laches    Looking to the statute of limitations on a comparable state law action, laches under a Lanham Act action requires that you show the following: 1) A delay in asserting a right or claim; 2) The delay was not excusable, and; 3) By delaying asserting your right or claim, you have caused the other party undue prejudice. Additionally, the court "must consider the public's interest in the trademark as a definite designation of a single source of goods." Board of Regents v. Buzzas Baseball 176 F.Supp.2d 133, 1348 (N.D. Geogia, 2001).

The comparable Georgia state law is OCGA Section 10-1-390 et seq. This statute provides for a 2 year statue of limitations. See Section 10-1-401.

Five Star Flags began selling to Realtors little American flags in 2002. Plaintiff, who worked for it, packed and shipped many of these flags in packages that identified them as Five Star Flags product. Yet it described these flags in its documentation with Chan as 'farm' flags. Flagco' sales invoices . Plaintiff was

delivering these 'farm' flags under Five Star Flags' name from 2002 through 2007. Moreover, in 2004, Five Star Flags adopted Flagco 's nomenclature and began calling the product that Flagco packed and shipped in Five Star Flags packages 'farm flags'. This extended to Chan's web site, fivestarflags.com, and led Mr. Chan to register and develop the web site 'farmflags.com' (and it's singular farmflag.com, which is the same web site as farmflags.com.) [Opposition Facts #20]

Whether you start the clock running at 2002 when Flagco began delivering product that it identified as farm flags in Five Star Flags packaging, or in 2004 when Five Star Flags began adopted Flagco 's nomenclature and started calling the product generically as farm flags, Flagco has sat on its hands. Just by reason of the comparable 2-year statue of limitations, Flagco 's delay is inexcusable. If Flagco was so concerned about protecting its proprietary rights, why would it wait 7 long years before issuing any protest, or wait 8 years before filing this lawsuit. [Opposition Facts #21]

Plaintiff has yet to offer an explanation why it sat on its hands for so many years before doing anything. Considering that it was profiting from the enterprise about which it complains, there is no explanation. [Opposition Facts #22]

Steve Chan is prejudiced by Flagco 's unreasonable 8-year delay. Considering the 2-year comparable state law statue of limitations, prejudice should be assumed as a matter of law. But there is more to this than just assumed prejudice. From 2002 to 2007, Flagco knowingly shipped product it called farm flags under Five Star Flags' label. Instead of saying something about it immediately, it actively participated in stripping of the mark , and packed and shipped more and more Five Star Flags' labeled farm flags and cashed more and more Five Star Flags checks. Now, after all this time, it points to this very conduct

in which it was a participant and seeks damages based on it. [Opposition Facts #23]

Five Star Flags has built a business during the 8 years at issue. It sells farm flags. And, for 8 years it has been selling these flags. In fact, since Flagco was profiting off of it too and participating in the enterprise, it too was engaged in this allegedly wrongful act. Five Star Flags cannot undue what it has done during the past 8 years. It cannot unravel its business. It even paid Flagco for its services in full. Steve Chan has been prejudiced by Flagco 's 8-year delay. [Opposition Facts #24]

Lastly, there is no public interest in this mark as a definite designation of a single source of goods. This mark is not of interest to the public as a whole, just Realtors. Among Realtors, farm flag is a generic term at this time, and it always has been generic ab initio. It describes all Realtor giveaway little American flags, and not a particular brand or manufacturer. Flagco acknowledged this by packing and shipping its product, stripped of its mark, under Five Star Flags' label, as a 'farm flag.' [Opposition Facts #25]

B.    Acquiescence            "Acquiescence is an equitable defense that dotes active consent by a senior user to another's use of is mark." Coach House Restaurant 934 F.2d at 1558. The elements to it are here: "(1) the senior user actively represents that it would not assert a right or claim; (2) the delay between active representation and assertion of he right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. Board of Regents 176 F.Supp.2d at 1347.

Mr. Chan has already demonstrated elements 2 and 3, delay is not excusable and undue prejudice, respectively. He refers the court to the section above in the laches analysis.

Flagco packed and shipped farm flags under Five Star Flags' label for seven long years. Its purchase order confirmations, the Flagco bill of sale, always described the product that it packing and shipping, as Five Star Flags farm flags. For five long years, it cashed Five Star Flags' checks. [Opposition Facts #26]

Flagco 's purchase order confirmation serves as an acceptance. It created a contract, a legally binding agreement by Flagco to delivery under Five Star Flags packaging farm flags. By dint of the time frame – five years – the exchange of money, and the contract binding the company, it should be assumed as a matter of law that a senior user actively represented that it would not assert a right or claim. [Opposition Facts #27]

But, there is more than a mere assumption. There were active representations. Mr. Chan had many conversations about the product, and more importantly, the purchase orders, with Vicki Lawrence. In 2002, they knew that their company was delivering "farm flags" packaged as Five Star Flags product. In 2004, they knew that Five Star Flags was marketing its little American flags as farm flags. In 2005 they knew Five Star was manufacturing and selling fabric flags to Realtors for farming. At all times, it knew that it was packing and shipping flags to Realtors as 'farm flags' and not 'farming flags'. Until receiving its cease and desist letter in 2009, said nothing about enforcing its exclusive rights under the mark, or its derivatives. [Opposition Facts #28.]

Plaintiff's Motion for Summary Judgment should be denied on the grounds that it acquiesced to Five Star Flags' use of the phrase 'farm flags.'

C.   Unclean hands   Unclean hands is a doctrine that requires that "he who comes into equity must come with clean hands. Precision Insrument Mfg. Co. v. Automobile Maintenance Machinery Co. 324 US 806, 814 (1945). It "requires that

the party seeking equity shall have acted fairly and without fraud or deceit as to the controversy in issue." Board of Regents 176 F.Supp.2d at 1348.

Plaintiff has not acted fairly and without fraud or deceit regarding the controversy at issue. Its hands are not clean. Plaintiff faults Five Star Flags as the "red-handed" "infringer" that this court needs to stop. But Plaintiff itself has red infringer fingers. It was a participant in the enterprise that it now faults, and for 7 long years, it was happy to cash Five Star Flags' checks and profit from it. [Opposition Facts #29, #30]

For seven years, Flagco packed and shipped 'farm flags' to Five Star Flags Realtor customers, as a Five Star Flags product. From 2004 through 2007, the packages that it delivered were marketed, sold, and packed and shipped as farm flags. If this was a wrongful act, then Plaintiff was one of the wrongful actors. It is three of the five fingers of the infringer's red hand. [Opposition Facts #30]

There is an old story about the guy who was convicted of murdering his parents. At sentencing, he asked the court for mercy. After all, he is an orphan.

If there was wrongdoing, Plaintiff was a participant, and happily cashed checks for five years. It profited from it wrongdoing, and now, after so much time has elapsed and a gravy train of checks has come to an end, it now complaints. If there was wrongdoing, which there was not, then Plaintiff is a wrongdoer too. Its hands are unclean.

D.    Estoppel    To prevail on estoppel, one must show: "(1) words, acts, or conduct or acquiescence by the plaintiff causing the defendant to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the defendant upon the state of things so indicated." Board of Regents 176 F.Supp.2d at 1347 – 1348.

Mr. Chan has already shown acquiescence. He has also shown the second element – willfulness or negligence with respect to the acts, conduct or acquiescence. Flagco knew that it was packing, stripping, and shipping US flags; there was no 'FARMING FLAGS' brand products in these Five Star Flags' labeled boxes. It profited from the activity. It knowingly packed, stripped, and shpped product that was bought and sold and delivered as farm flags. Five Star Flags' detrimental reliance is manifest. [Opposition Facts #30]

At first, Five Star Flags did not market or advertise its product as farm flags. Two years into the enterprise it adopted Flagco 's nomenclature. It was only in 2004 that Five Star Flags began to market its product as farm flags – the name employed by Flagco when it confirmed Five Star Flags' purchase orders. Flagco made no complaint and lodge no protest until two years after Five Star Flags cut back on its purchase order volume. [Opposition Facts #31]

Mr. Chan has changed his position. He has detrimentally relied on Plaintiff's acquiesce. Farm Flag is estopped from asserting the claim at issue. [Opposition Facts #32]

VI.   Plaintiff's Motion Must Be Denied Because The Mark Is Generic

A term is generic if it "is commonly used as the name of a kind of goods." Liquid Conrols Corp. v. Liquid Control Group 802 F.2d 934, 936 (7th Cir. 1986). "Unlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is a species." Liquid Controls Corp. 802 F.2d at 936. If a term is generic, it cannot be trademarked. Liquid Controls Corp. 802 F.2d at 936. The presumptions obtained by registration will be defeated upon proof that the term is generic. Liquid Controls Corp. 802 F.2d at 937.

And further, the presumption of validity that federal registration confers (see 15 U.S.C. § 1115(a)) evaporates as soon as evidence of invalidity is presented. Liquid Controls Corp. 802 F.2d at 938. Its only function is to incite such evidence, and when the function has been performed the presumption drops out of the case. Cf. A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1037-39 (Fed.Cir.1992) (en banc). The presumption performed its function—Pro-Line presented evidence that the term "door systems" is generic, thus creating a conflict in evidence.

The term "farming flags" is generic. An industry term specific to Realtors, the phrase "farming flag" or "farm flag" specifies a genus, not a species. Protecting that phrase with a trademark is similar to mark protecting the phrase "copy machine." [Opposition Facts #33]

Part of Plaintiff's proprietary claim rests on its assertion that it "coined" the term in 1989. [Lawrence Decl par 6.] According to Plaintiff, he invented the term … it sprang into being as a result of his industry and creativity. He deserves proprietary rights because he is father of its invention.

But, Plaintiff did not invent the term. Someone else invented it, probably a Realtor. Many newspaper published accounts show the fruit that was sought: publicity or exposure for a realty firm or professional. The majority of the declarations in support of Mr Chan's opposition come from people, identified in these articles. Their declarations reflect what the articles do not, namely, what Realtors understand the term to mean as the relevant consuming public. [Opposition Facts #34, #35]

Judge LearnedHand, in holding ASPIRIN generic, stated that the key issue in determining genericness "is merely one of fact: What do buyers understand by

the word for whose use the parties are contending?" Bayer Co. v. United Drug Co., 272 F. 505, 509 (S.D.N.Y.1921).

Plaintiff did not invent the term. It is not the product of his creativity. The phrase existed previous to Plaintiff's product, and even previous to its existence.

As we know from the declarations, Mssr. Crye, Thompson, Peera, Fenner, and Madames Roshek and Rayburn, as well as the newspaper articles submitted by way of a requests for judicial notice, the phrases farm flag and farming flag are generic. [Opposition Facts #35]They describe a genus – small American flags used by Realtors as a marketing giveaway. It does not refer to a species – i.e. the small American Realtor giveaway flag manufactured by a specific entity. It is not a Xerox copy machine, but simply a copy machine, which cannot be trademarked.

Plaintiff's own use of the phrase in its bills of sale to Five Star, proves that it considered the phrase generic too. From 2002 through 2004, Five Star Flags issued purchase orders for Realtor marketing giveaway flags. Plaintiff responded to each one of those purchase order with a written memorandum confirming the packing, stripping of logo and marks, and shipping, under Five Star Flags' name, the very products at issue in this instant motion, and called them 'farm' flags, a generic use. From 2004 through 2007, Five Star Flags marketed and sold farm flags and asked in its purchase orders for the 'farming flags' mark and logo to be stripped off before packing and shipping. Plaintiff responded with a written memorandum that confirmed that it would deliver under Five Star Flags' label farm flags – again, a generic use of the phrase. [Opposition Facts #36] Genericness is a question of fact. McCarthy Section 12:12

Realtors know the phrase farm flags as a generic term to describe any small Realtor marketing giveaway US flag. It was employed in that fashion in this

specific industry before 1994, or 1989 and still today.  This phrase cannot be trademarked.

The Court must deny Plaintiff's motion because whether the term 'farming flags' is generic, is a question of fact.

VII.   The Court Must Deny Plaintiff's Motion Because the Mark Registration was improper.

"First and foremost, the TTAB holds the list of goods or services in a trademark application to be material information upon which registration is dependent.  A 'material fact' before the Trademark office means that 'but for [its] misrepresentation [or omission], the federal registration either would not or should not have issued" or been maintained. J THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, section 31 :67 (4th ed. 2005) (this quote was taken from 'Ruling with an Iron Fist', Meryl Rothchild, page 857, [Cardoza Arts & Ent. L.J. Editor-inchief, JD candidate, Benjamin N Cardozo School of Law.

The Plaintiff's trademark application is an issue. As can be seen from the Request for Judicial Notice E, Exhibit E-1, the goods and services box on the application contains a 'white out' portion. Mr. Chan contends the Plaintiff's 1994 trademark application itself reveals a disputable fact; was the omission of "US" flag in the "goods and services" box an omission that affected whether or not the trademark should have been issued? [see docket 66 in its entirety]

For this reason, this Court must deny Plaintiff's Motion for Summary Judgment.

VIII.  This Matter Should Be Heard On Its Merits, And Not Of Admissions Made As A Result Of A Procedural Error By An Inexperienced Pro Per Who Has Been Forced To Defend Himself Because He Is Not Wealthy Enough To Afford Counsel

Mr. Chan is not schooled in law. In fact, he is also uncolleged and unhigh schooled. He only has a 9th grade education. Mr. Chan is not in pro per by choice. He wants counsel. He needs counsel. By dint of the economic distribution of rights and benefits in this country, he belongs to that class of Americans with limited legal rights because he cannot afford an attorney. Mr. Chan is in pro per because he cannot afford counsel. Notwithstanding, he now must navigate the complexities of a trademark lawsuit in a federal court in a faraway state. [Opposition Facts #5]

Mr. Chan will make mistakes in these proceedings. A set of requests are deemed admitted as a function of law because he made a mistake. Request is made of this court to allow him leeway or wiggle-room – space for mistakes. Unless justice in the federal court only is for the wealthy, then Mr. Chan must be allowed to withdraw the deemed admissions. He must be allowed to litigate this matter on the merits, rather than the 'gotcha' trap set by opposing counsel exercising judicial gamesmanship, exploiting Mr. Chan's class based vulnerability as an involuntary pro per party.

Plaintiff's counsel deluged Mr. Chan with inspection demands, interrogatories, and requests for admissions, all requiring expansive responses, all served simultaneously, and due on the same day. On March 23, 2010, Plaintiff served Mr. Chan Requests for Admissions, a set of interrogatories, and a set of inspection demands. Mr. Chan worked hard on them to meet his obligations, but due to inexperience, on unfamiliar ground, and overwhelmed, he miscalculated. Justice should not be a function of this sort of mistake made under these circumstances. [Opposition Facts #2, #3]

To meet his discovery response obligations, Mr. Chan needed extra time; most of all, he needed the protective order agreed to with Plaintiff in the Joint

Discovery Plan. However Plaintiff's counsel, who is now full of self righteous indignation, made sure to maximize his exploitation of Mr. Chan's vulnerability by overwhelming him with a mountain of discovery, and then, stutter-stepping communications. An extension request was denied. [see docket 49] Attempting to preserve his rights, Mr. Chan served responses to the discovery with objections only. Due to inexperience and unfamiliarity of the complexities of federal civil procedure, he made a mistake. His responses were one-day late, April 27th instead of April 26th. [see docket 46]

Plaintiff fixates indignity on the responses, then exaggerates to make them even one day later. However, it conveniently leaves out of its narrative that full responses were served within a week, as dictated by him. The responses included a supplemental response to the requests for admission. See Exhibit A to the Chan declaration in support of this Opposition to the instant motion. Also conveniently left out of its narrative to this court is a description of the truckload of documents that Mr. Chan produced, copies of which were previously forwarded to this court on CD. They consisted of over 3000 pages of electronic documentation, and access to over 7 million additional pages that Mr. Chan worked very hard to arrange the generation of. But, Mr. Chan apparently made a mistake in discovery. [Opposition Facts #2, #3]

As a result of Mr. Chan's mistake, the requests were deemed admitted by operation of law. This result is unjust. Mr. Chan is disadvantaged enough in these proceedings, and should not also be denied the opportunity to be heard on the merits because he cannot afford counsel and must represent himself in pro per. In two different subsections, FRCP 36 gives the court authority to allow withdrawal of Mr. Chan's now deemed admitted requests. The first is found in Rule 36(a)(3). It requires a party served with a request for admission to respond to

it within 30-days. But, it allows the court to lengthen the response time. ["A longer time for responding may ... be ordered by he court."]. The second way to avoid the deemed admissions is found in Rule 36(b). Under this subsection, an untimely response is deemed an admission. However, it:

"... permits the admission to be withdraw or amended, Subject to Rule 16(e) the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."

Case law authority supports the authority given to the court in Rule 36. For example, in Brust v. Industrial Bank of Commerce 18 FRD 90 (SDNY 1995), the court held that it would not penalize a party with deemed admissions when that party's failure to promptly respond to a set of requests for admission was due to unfamiliarity with the rules, particularly when Plaintiff has not shown prejudice. In US v. Petroff-Kline 557 F.3d 285 (2009), it was held that the court has the power to permit a longer time to respond to a request for admission and thereby withdraw a deemed admission. In Parker Inc. v. Florida Brewery Corp. 348 F.2d 161, it was held that the court was within its power to withdraw deemed admissions by extending the response time.

Despite Mr. Chan's supplemental responses to all discovery (in their possession, including the requests for admission) within a Plaintiff-mandated week after the original due date, Plaintiff somehow forgot to mention this to the court. Mr. Chan asks the Court to withdraw the requests deemed admitted by operation of law due to unfamiliarity with the rules and designate his (one-week) later served responses constitute his timely response to the request.

Plaintiff has not shown prejudice. He received full responses to all discovery. Considering that timely responses would have been served, but for

Plaintiff's gamesmanship at the discovery cut-off , and using discovery to exploit Mr. Chan's vulnerability as an inexperienced pro per, Plaintiff cannot show prejudice. [Opposition Facts #5, #46]

Plaintiff comes to court alleging an injustice. Now, he proposes vindication by a judicial proceeding that would deny Mr. Chan basic and fundamental fairness – the opportunity to be heard on the merits.

Respectfully, unless justice is dispensed on the basis of who can or cannot afford counsel, then the deemed admissions must be withdrawn.

IX. The Plaintiff's Motion Must be Denied : Confusion Claims are Insufficient

Should the court reach the analysis of confusion, Chan rebuts them as follows: "Isolated instances of actual confusion are insufficient to sustain a finding of likelihood of confusion. Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 506 (5th Cir. 1979); Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1231 (3rd Cir. 1978). Indeed, the fact that only three instances of actual confusion were found after nearly 15 years of extensive concurrent sales under the parties' respective marks raises a presumption against likelihood of confusion in the future. FS Services, Inc. v. Custom Farm Services, Inc., 325 F.Supp. 153, 162 (N.D.Ill.1970), aff'd, 471 F.2d 671 (7th Cir. 1972).

X.      Conclusion

For all the above reasons, Defendant Steve Chan respectfully requests that the court deny Plaintiff's Motion for Summary Judgment. Request is also made that the court withdraw Mr. Chan's deemed admissions. As per docket 36, request is also made for another 6-month fee-exempt PACER access.

Respectfully submitted

[signature and date is on the following page]

Dated this _14_ day of _October_ , _2010_

Respectfully submitted,

Steven A Chan

American flag manufacturer

Five Star Flags

720 Center St

Costa Mesa, CA 92627

Local Rule 7.1D Certification

I hereby certify that this brief has been prepared with one of the font and point selections approved by the court in Local Rule 5.1C, namely, Times New Roman, 14 point.

————————

Steven A Chan
American flag manufacturer
Five Star Flags
720 Center St
Costa Mesa, CA   92627

[signature appears on following page]

Dated this 14 day of October , 2010

Respectfully submitted,

Steven A Chan

American flag manufacturer

Five Star Flags

720 Center St

Costa Mesa, CA 92627

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE FLAG COMPANY, INC. a
Georgia Corporation,

     Plaintiff,

    v.

STEVEN A CHAN, LLC (d/b/a FIVE

STAR FLAGS and/or VIA5), a

California Limited Liability Company,

and STEVEN A. CHAN, a California

resident,

     Defendant

CIVIL ACTION NO:
1:09-CV-1880

Memorandum of Points & Authorities:

Defendant's Opposition to Motion for
Summary Judgment

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed the foregoing Memorandum of Points &
Authorities: Defendant's Opposition to Motion for Summary Judgment with the
Clerk of the Court by transmitting it by Courier to the Clerk of the Court. The
Clerk of the Court will use the CM/ECF system to automatically send e-mail
notification of such filing to the following attorneys or record:

J Tucker Barr

Arnall Golden Gregory LLP

171 17th Street, N.W. Suite 2100

Atlanta, GA 30363

Email: tucker.barr@agg.com

[signature follows on following page]

Page 1

Dated this 14 day of October , 2010

                        Respectfully submitted,

                        Steven A Chan

                        American flag manufacturer

                        Five Star Flags

                        720 Center St

                        Costa Mesa, CA 92627

Dated this 12th day of October, 2010

_____

Steven A Chan

American flag manufacturer

Five Star Flags

720 Center St

Costa Mesa, CA   92627

Page 2

[signature appears on following page]