UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE FLAG COMPANY, INC.,

       Plaintiff,

       v.

STEVEN A. CHAN, LLC (d/b/a
FIVE STAR FLAGS and/or VIA5)
and STEVEN A. CHAN,

       Defendants.

CIVIL ACTION

NO. 1:09-CV-1880-CAP

**O R D E R**

    This matter is before the court on the plaintiff's motion for summary judgment [Doc. No. 47] and the plaintiff's motion for leave to file a certified copy of a file wrapper [Doc. No. 91].  As an initial matter, the plaintiff seeks leave to file a certified copy of the file wrapper for the FARMING FLAGS mark in order to address the defendant Chan's concerns about the legitimacy of some of the evidence attached to the plaintiff's motion for summary judgment. Since the plaintiff is offering this certified copy of the file wrapper solely in response to Chan's concerns regarding the accuracy of this evidence and not as a means to supplement the record with new evidence, the plaintiff's motion for leave to file a certified copy of the file wrapper [Doc. No. 91] is GRANTED.

**I.    Factual Background**

    The plaintiff, The Flag Company, Inc., is in the business of manufacturing and selling various types of flags, flag poles, and

other flag-related products for residential and commercial use;
among the many products that the plaintiff manufactures and sells
are hand-held American flags [Doc. No. 47-8, page 2].
Approximately twenty years ago, the plaintiff began marketing and
selling its hand-held flags under the trademark FARMING FLAGS
[Id.].  The plaintiff obtained a federal trademark registration
(U.S. Reg. No. 1,858,628) for the mark on October 18, 1994; the
mark is registered for use in connection with "plastic flags"
[Id.].  The registration has been renewed and is in good standing
[Id.].  On September 22, 2000, between the fifth and sixth year
after registration, the plaintiff filed its affidavit of
incontestability with the United States Patent and Trademark Office
(USPTO), which the USPTO acknowledged on January 2, 2001 [Id.].

The plaintiff sells its products, including hand-held flags
branded under the mark, to customers throughout the United States
[Doc. No. 47-8, page 3].  The plaintiff's FARMING FLAGS products
are sold directly to customers through mail and phone orders, as
well as through the plaintiff's websites, www.flagco.com and
www.farmingflag.com [Id.].  The plaintiff also sells its FARMING
FLAGS products to certain distributors and business partners who,
in turn, offer them for resale [Id.].  For nearly two decades, the
plaintiff has extensively promoted the mark in all types of media,
including advertisements in trade journals and other publications;

2

during this time, the plaintiff has spent significant sums promoting the mark [Id.]. In the last two years, the plaintiff has spent at least $23,842.60 to promote and advertise its FARMING FLAGS products in print advertising, post-card mailers, and other non-Internet related marketing [Id.].

The plaintiff developed a website in the mid-1990s, and the plaintiff depends heavily on the Internet to make sales and to promote its products, including the FARMING FLAGS products [Doc. No. 47-8, pages 3-4]. A large percentage of the plaintiff's sales of FARMING FLAGS products have been made through the plaintiff's websites, and the plaintiff's customers visit its websites to view and learn about the plaintiff's FARMING FLAGS products [Id.]. The plaintiff actively engages in Internet marketing and advertising [Doc. No. 47-8, page 4].

The defendant, Steven A. Chan, formed the defendant Steven A. Chan, LLC, in 1999 [Doc. No. 47-2, page 4]. Chan claims that Chan LLC was wound down in 2009 [Id.]. Chan was Chan LLC's Managing Member, and he claims that he is the successor to Chan LLC [Doc. No. 47-2, page 5]. Chan made the decision for Chan LLC to use the terms "farming flag," "farm flag," and "farm flags" in connection with the sale of Chan LLC's flag products, and Chan had a financial interest in that activity, and/or directed, controlled, ratified,

participated in, or was the moving force behind that activity [Doc. No. 47-2, page 9].

Chan LLC conducted business under the trade names Five Star Flags and Via5, and these trade names are presently owned and used by Chan [Doc. No. 47-2, page 4].  Between 2002 and 2007, the plaintiff states that Chan LLC purchased more than 230,000 of the plaintiff's FARMING FLAGS products, which Chan LLC then resold to other parties [Doc. No. 47-2, pages 5-6].  Chan ceased purchasing the plaintiff's FARMING FLAGS products in 2007 [Doc. No. 47-2, page 6].  From 2007 to the present, Chan LLC and Chan have used the mark and the terms "Farm Flag" and "Farm Flags" in connection with the promotion and sale of competing hand-held American flags [Id.]. The plaintiff's flags and the defendants' flags both measure 12" by 18" and are attached to a thirty-inch wooden staff [Id.].  The plaintiff alleges that Chan LLC registered the domain names www.farmflag.com and www.farmflags.com to market and sell competing hand-held flag products; the plaintiff also alleges that the defendants have used the website www.fivestarflags.com to sell infringing products [Id.].  The terms "Farming Flags," "Farm Flag," and "Farm Flags" appear repeatedly on these websites and are used as the name of the competing product offered for sale on these websites [Id.].  Chan and Chan LLC's websites are returned in a list of search engine "hits" for the keyword "Farming Flags" [Doc.

4

No. 47-2, page 7].  Between 2007 and 2009, the plaintiff states

that Chan LLC and Chan sold 240,636 hand-held American flags under

the infringing marks "Farm Flag" and "Farm Flags" and that the

revenue attributable to these sales was $92,480.16 [Id.].

## II.  Chan's Admissions

On March 23, 2010, the plaintiff served Chan with requests for

admissions [Doc. No. 39].  The plaintiff's requests were served by

mail, making Chan's responses due to be served on or before April

26, 2010, under the Federal Rules of Civil Procedure 36(a)(3) and

6(d).  Chan served his responses by facsimile late [Doc. No. 42].

Chan did not supply a single substantive response to any of the

requests for admission but instead recited the following identical

list of objections in response to each and every request:

> Chan objects on the following grounds:
> compound, ambiguous, oppressive and
> burdensome, relevance, privacy, trade secret,
> attorney/client communication, attorney work
> product, work product.

At the time of filing of the plaintiff's summary judgment motion,

Chan had neither sought nor obtained an amendment or withdrawal of

his admissions, and the discovery period is now closed.  However,

on July 9, 2010, Chan did try to file a supplemental discovery

response, conveniently the day after he filed his first[1] response

---

[1] Because of the confusion generated by Chan's failure to
follow the Federal Rules and this court's Local Rules, the court

in opposition to summary judgment [Doc. Nos. 61 and 63].  Chan has

not filed a motion seeking withdrawal of these admissions as of the

docketing of this order.  Chan has consistently cited his pro se

status in an attempt to an excuse his compliance with deadlines and

procedural rules.

Under Federal Rule of Civil Procedure 36(a)(3), because of his

late response and because of his objections that appear totally

inapplicable, the court finds that Chan has admitted all of the

plaintiff's requests for admission, including the following [Doc.

No. 47-2, pages 8-10]:

> 3.   Admit that you have no legal right to use Plaintiff's
>      Mark.
>
> 4.   Admit that Chan LLC has no legal right to use Plaintiff's
>      Mark.
>
> 8.   Admit that the federal registration for Plaintiff's Mark
>      is incontestable.
>
> 9.   Admit that you infringed Plaintiff's Mark.
>
> 10.  Admit that Chan LLC infringed Plaintiff's Mark.
>
> 11.  Admit that your infringement of Plaintiff's Mark was
>      undertaken intentionally, maliciously, and in bad faith.
>
> 12.  Admit that Chan LLC's infringement was undertaken
>      intentionally, maliciously, and in bad faith.
>
> 13.  Admit that the products you and/or Your Business sell
>      under the names "farm flag," "farm flags," and/or

---

did not consider the original response brief filed by Chan [Doc.
No. 78] but allowed him to re-file a response brief.

"farming flags" are likely to be confused with Plaintiff's Mark.

14. Admit that the terms "farming flags," "farm flag" and "farm flags," when used in connection with the sale and promotion of flag products, infringe Plaintiff's Mark.

15. Admit that you have used the terms "farming flags," "farm flag" and "farm flags" in connection with the sale and promotion of flag products that compete with similar products manufactured and sold by Plaintiff.

16. Admit that you made the decision for Chan LLC to use the terms "farm flag," "farm flags," and "farming flag" in connection with the sale of flag products.

17. Admit that you supervised Chan LLC's adoption, use, and promotion of products using the terms "farming flag," "farm flag," and "farm flags," had a financial interest in that activity, and/or directed, controlled, ratified, participated in, or were the moving force behind that activity.

29. Admit that the terms "farming flags," "farm flag" and "farm flags" appear on the websites www.farmflag.com, www.farmflags.com, www.via5.com and www.fivestarflags.com to sell flag products similar or identical to those sold by Plaintiff.

33. Admit that you supervised Chan LLC's registration and use of the websites www.farmflag.com and www.farmingflags.com, had a financial interest in that activity, and/or directed, controlled, ratified, participated in, or were the moving force behind that activity.

34. Admit that your registration and use of the websites www.farmflag.com and www.farmflags.com were undertaken intentionally, maliciously, and in bad faith.

35. Admit that Chan LLC's registration and use of the websites www.farmflag.com and www.farmflags.com were undertaken intentionally, maliciously, and in bad faith.

Standing alone, Chan's admissions establish his personal liability for trademark infringement.  Nevertheless, the court will address the plaintiff's other evidence that demonstrates that there is no genuine issue of material fact in this case and that summary judgment is appropriate.

## III. Legal Standard

The plaintiff moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 [Doc. No. 81].  Rule 56(c) of the Federal Rules of Civil Procedure authorizes judgment as a matter of law for the movant when all "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact."  The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 156 (1970); <u>Johnson v. Clifton</u>, 74 F.3d 1087, 1090 (11th Cir. 1996).  The moving party's burden is discharged merely by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  <u>Clifton</u>, 74 F.3d at 1090.  Once the moving

8

party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. <u>Id.</u>, 477 U.S. at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. <u>Id.</u>

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the non-movant. <u>Id.</u> In order for factual issues to be "genuine" they must have a real basis in the record. <u>Matsushita</u>, 475 U.S. at 586. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." <u>Id.</u> (citations omitted).

**IV. Analysis**

"In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use

9

of the contested mark is likely to cause confusion." <u>Dieter v. B & H Industries of Southwest Florida, Inc.</u>, 800 F.2d 322, 326 (11th Cir. 1989).  As discussed below, the plaintiff is able to satisfy both prongs of its trademark infringement claim as a matter of law.

###   A.   Plaintiff's Mark is Presumed Valid

The plaintiff began using its mark approximately twenty years ago and obtained its federal registration for the mark on October 18, 1994.  The registration has been renewed and is in good standing.  In addition, the plaintiff's mark is incontestable because more than five years have passed since the registration issued and because the plaintiff filed a timely affidavit of incontestability with the United States Patent and Trademark Office.  15 U.S.C. § 1065; <u>Dieter</u>, 880 F.2d at 328.  As such, the validity of the plaintiff's mark is presumed.  <u>Id.</u>

Chan appears to attempt to rebut the presumption of validity of the plaintiff's mark.  However, the only evidence that Chan has submitted in support of his assertion that the mark is generic is inadmissible or otherwise not properly before the court, such as his requests for the court to take judicial notice of information that does not satisfy Federal Rule of Evidence 201(b).  Chan has not raised an issue of material fact as to whether the plaintiff's mark is generic.  Furthermore, Chan has not come forward with any evidence actually demonstrating the use of the combined term

"farming flag," whether in connection with "small plastic flags or anything else.  As such, the court finds that the mark is valid.

**B.    Likelihood of Confusion**

Seven factors are relevant in determining if a likelihood of confusion exists:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and the defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

North American Medical Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1220 (11th Cir. 2008).  As shown below, all of these factors weigh so heavily in favor of the plaintiff that summary judgment is appropriate in this case.[2]

**1.    Strength of the Plaintiff's Mark**

The first factor is the strength of the plaintiff's mark.  The plaintiff's mark is incontestable and is therefore presumed to be "relatively strong."  Dieter, 880 F.2d at 329.  This presumption is valid given that the plaintiff has used the mark consistently for

---

[2] While ordinarily a jury issue, likelihood of confusion may be decided as a matter of law.  See Alliance Metals, Inc. v. Hinely Industries, Inc., 222 F.3d 895, 907 (11th Cir. 2000).

approximately twenty years, has promoted and advertised the mark in numerous types of print and other media, has featured the mark prominently on its websites since the mid-1990s, and has engaged in various types of Internet advertising.   Accordingly, this factor weighs in the plaintiff's favor.

### 2.    Similarity - Plaintiff's Mark and Allegedly Infringing Mark

The second factor is the similarity between the plaintiff's mark and the allegedly infringing mark.   To evaluate the similarity of marks, a district court must consider "the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed."   E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc., 756 F.2d 1525, 1531 (11th Cir. 1985). "[W]here the goods and services are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products."   SunAmerica v. Sun Life Assurance Co. of Canada, 890 F.Supp. 1559, 1575 (N.D. Ga. 1994).

In this case, the defendants use three terms that infringe the plaintiff's mark: "farming flags," "farm flags," and "farm flag." The first of these is identical to the plaintiff's mark (FARMING FLAGS), and the other two are nearly identical.    The salient

12

portion of the mark is the root word "farm," and the omitted and additional matter (the "ing" and "s") have no independent meaning. Also, the plaintiff's mark and the defendant's infringing marks are displayed in standard characters, not with logos or other design features.  As such, the terms "farming flags," "farm flags," and "farm flag" are identical or nearly identical to the plaintiff's mark in terms of sound, appearance, meaning, and presentation. Further, the similarity of the marks is particularly likely to give rise to confusion given that the products at issue are identical. This factor weighs in the plaintiff's favor.

### 3.   Similarity of Products

The third factor to consider is the similarity between the products and services provided by the plaintiff and the defendant. "The greater the similarity between the products and services, the greater the likelihood of confusion." <u>Exxon Corp. v. Texas Motor Exchange</u>, 628 F.2d 500, 505 (5th Cir. 1980).  In this case, both the plaintiff and the defendants sell hand-held American flags. The plaintiff's flags and the defendants' flags both measure 12" by 18" and are attached to a thirty-inch stick.  As such, the products are identical, and this factor weighs in the plaintiff's favor.

## 4/5. Similarity of Sales Methods/Similarity of Advertising Methods

The fourth factor is the similarity of the sales methods used, and the fifth factor is the similarity of the advertising methods used.  In this case, the plaintiff and the defendants market their products to the same customers and through the same trade channels. Specifically, the plaintiff and the defendants use websites to display their goods, provide information about their products, and take orders, and both the plaintiff and the defendants rely on Internet search engines to lead customers to their websites.  Thus, the fourth and fifth factors weigh in the plaintiff's favor.

### 6.   Defendant's Intent

The sixth factor is the defendant's intent, such as whether the defendant hopes to gain a competitive advantage by associating his product with the plaintiff's established mark.  In this case, the defendants observed the value of the plaintiff's mark from 2002 through 2007, during which time the defendants purchased more than 200,000 flags from the plaintiff, before the defendants began using the mark as their own.  When the plaintiff confronted Chan with the infringement and requested that he immediately cease using the plaintiff's mark, he refused.  This factor weighs in the plaintiff's favor.

### 7.   Actual Confusion

The seventh factor is whether actual confusion exists.  There is evidence of actual confusion in this case.  The plaintiff's founder stated that she personally received several phone calls during business hours from real estate agents; these agents all inquired about purchasing hand-held American flags and, at one point during the conversation, asked if she was the company located in Costa Mesa, California, which is where Chan and Chan LLC are located [Doc. No. 47-8, page 7].  Also, one of the plaintiff's former customers indicated that she bought hand-held flags from Chan instead of the plaintiff but that she thought that Chan was selling the plaintiff's product [Id.].  In addition, the plaintiff's office manager received an email from a real estate agent in California that was intended for Chan; while this email concerned subject matter unrelated to this lawsuit, this shows that consumers confuse the defendants and the plaintiff [Id.].

### C.   Chan's Equitable Defenses

Chan claims that the plaintiff's trademark infringement claim is barred by laches, acquiescence, estoppel, and unclean hands. Chan appears to base his assertion of these defenses on his claim that the plaintiff was fully aware that Chan had appropriated the mark for his own use, yet failed to bring a trademark infringement claim.  However, there is no evidence in the record supporting

Chan's claim that the plaintiff actively consented to his use of the mark or that the plaintiff represented that it would not assert a claim for infringement.  Also, Chan did not plead unclean hands as a defense in his Answer; as such, any defense based upon unclean hands has been waived under Federal Rule of Civil Procedure 8(c).  For these reasons, Chan's equitable defenses fail as a matter of law.

### D.   Chan - Personal Liability

"[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement." Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161, 1185 (11th Cir. 1994).  Chan has repeatedly admitted through this case that he is the "alter ego" of Chan LLC and that "all of [his] wrongful acts were conducted in formal corporate action" [Doc. No. 47-5, pages 4 and 6; Doc. No. 32, page 2].  Chan was Managing Member of Chan LLC, and as such, all conduct of Chan LLC was directed, controlled, ratified, and participated in by Chan.  For these reasons, Chan is individually liable for the conduct of Chan LLC.

### E.   Conclusion

The plaintiff's mark is valid, and the defendants' use of the mark is likely to cause confusion.  Also, Chan's equitable defenses fail, and Chan is personally liable for the actions of Chan LLC.

As such, Chan is liable for trademark infringement as a matter of law, and the plaintiff's motion for summary judgment [Doc. No. 47] is GRANTED.

## V.   Remedies

The Lanham Act provides for a number of remedies for trademark infringement, including the defendant's profits, the plaintiff's damages, costs of the action, attorney's fees, treble damages, and injunctive relief.  15 U.S.C. §§ 1116 and 1117.  "The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party." Burger King Corp. v. Mason, 855 F.2d 779, 781 (11th Cir. 1988) (citation omitted).  In this case, the plaintiff seeks a permanent injunction, the defendants' profits (plus enhanced damages of up to three times the amount of the defendants' profits), compensation for its advertising expenditures, and attorney's fees.

### A.   Permanent Injunction

A permanent injunction is one of the remedies provided for under the Lanham Act.  15 U.S.C. § 1116(a).  In "ordinary trademark infringement actions ... complete injunctions against the infringing party are the order of the day." Angel Flight of Georgia, Inc. v. Angel Flight America, Inc., 522 F.3d 1200, 1209 (11th Cir. 2008) (citing SunAmerica Corp. v. Sun Life Assurance Company of Canada, 77 F.3d 1325, 1336 (11th Cir. 1996)).  Under

17

section 1116(a), a court must exercise its power to grant injunctions "according to the principles of equity."

A permanent injunction in this case would comport with principles of equity. Specifically, the plaintiff has suffered irreparable injury, and this injury cannot be cured with monetary damages alone. While the plaintiff requests monetary compensation for the infringement that has occurred up to this date, it will continue to be injured if Chan is not ordered to discontinue this infringement. Finally, an injunction would prevent customer deception in the marketplace, which is in the public interest. For these reasons, Chan, as well as any business under his control, is permanently enjoined from using the plaintiff's mark or any colorable imitation of the plaintiff's mark.

### B. Lost Profits

The Lanham Act entitles a trademark holder to recover the profits earned by a defendant from infringement of the mark. 15 U.S.C. § 1117. "[A] plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits." Burger King, 855 F.2d at 781 (citing Wesco Manufacturing, Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487 (11th Cir. 1987)). "In assessing profits the plaintiff shall be required to prove defendant's sales only." 15 U.S.C. § 1117(a).

In this case, the infringing activity commenced in 2007 and appears to continue to this day [Doc. No. 47-2, pages 6 and 10]. In response to the plaintiff's interrogatories, Chan disclosed that, from 2007 through 2009, he and Chan LLC sold 240,636 poly and fabric "Farm Flags" at a total price of $92,480.16 [Doc. No. 47-2, page 7]. After adjusting this amount for the 2,500 flags that Chan purchased from the plaintiff in 2007, which Chan states was at a cost of $600, this amount is reduced to $91,880.16 [Doc. No. 47-2, page 6]. The court notes that Chan did not oppose these amounts in his opposition brief to summary judgment [Doc. No. 79]. As such, the court finds that the plaintiff is entitled to an award of lost profits in the amount of $91,880.16.

The court notes that treble damages for use of a counterfeit mark are appropriate and within the court's discretion when the defendant's use of the counterfeit mark in connection with the sale of goods or services is intentional. 15 U.S.C. § 1117(b). In this case, an enhanced award is appropriate to compensate the plaintiff for confusion in the marketplace, the loss of goodwill, damage to its brand, and the disruption of its business as a result of the defendants' use of its mark. As such, the court finds that the plaintiff is entitled to an enhanced award of $275,640.48. The court finds that this award is sufficient to compensate the plaintiff for its advertising expenses that may have been rendered

19

less effective as a result of the defendants' infringement and for any infringement that has occurred up to the docketing date of this order.

### C.   Attorney's Fees

Under section 1117(a), the court may award reasonable attorney's fees to the prevailing party "in exceptional cases." "[E]xceptional cases are those where the infringing part acts in a 'malicious,' 'fraudulent,' 'deliberate,' or 'willful' manner." Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 361 (11th Cir. 1997) (citing Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994)).

In this case, Chan's use of the plaintiff's mark was intentional and willful.  This is not a case in which an infringer adopted a mark without knowledge that his use might infringe the rights of another; rather, Chan was the plaintiff's customer for five years and acted with full knowledge of the plaintiff, the plaintiff's business, and the plaintiff's mark.  As such, the court finds that the plaintiff is entitled to an award of reasonable attorney's fees.  The plaintiff is ORDERED to file an affidavit within fourteen days of the docketing of this order which sets forth the amount of the attorney's fees that it is seeking, including the specific tasks performed, the time involved, and the amount claimed for each task in accordance with Federal Rule of

Civil Procedure 54(d)(2).  If Chan wishes to file a response brief, he is ORDERED to do so within fourteen days of the filing of the plaintiff's affidavit; as the court has already decided that an award of reasonable attorney's fees is appropriate in this case, Chan should limit the contents of his response brief to the issue of the reasonableness of the amount of attorney's fees sought by the plaintiff.  If the plaintiff wishes to reply, it is ORDERED to do so within seven days of the filing of Chan's response.

## VI. Conclusion

For the reasons stated above, the plaintiff's motion for leave to file a certified copy of the file wrapper [Doc. No. 91] is GRANTED.  The plaintiff's motion for summary judgment [Doc. No. 47] is also GRANTED.  Chan, as well as any business under his control, is PERMANENTLY ENJOINED from using the plaintiff's mark or any colorable imitation of the plaintiff's mark.  The clerk is DIRECTED to enter judgment against the defendant Chan in the amount of $275,640.48.  The plaintiff's request for reasonable attorney's fees is also GRANTED.  The plaintiff is ORDERED to file an affidavit within fourteen days of the docketing of this order which sets forth the amount of the attorney's fees that it is seeking, including the specific tasks performed, the time involved, and the amount claimed for each task in accordance with Federal Rule of Civil Procedure 54(d)(2).  If Chan wishes to file a response brief,

he is ORDERED to do so within fourteen days of the filing of the plaintiff's affidavit; as the court has already decided that an award of reasonable attorney's fees is appropriate in this case, Chan should limit the contents of his response brief to the issue of the reasonableness of the amount of attorney's fees sought by the plaintiff.  If the plaintiff wishes to reply, it is ORDERED to do so within seven days of the filing of Chan's response.

SO ORDERED, this 15th day of December, 2010.


/s/Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge